UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| THE CITY OF MARTINSVILLE, ) | | |
| Plaintiff, ) | | |
| ) | | |
| vs. ) | 1:04-cv-1994-RLY-WTL | |
| ) | | |
| MASTERWEAR CORPORATION, JAMES ) | | |
| A. REED, LINDA LOU MULL REED, ) | | |
| WILLIAM J. CURE, and ELIZABETH J. ) | | |
| CURE, ) | | |
| Defendants. ) | | |

**ENTRY ON THE CITY OF MARTINSVILLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY**

The City of Martinsville (the "City"), owner of the City's well field, sues Masterwear Corporation, James A. Reed, Linda Lou Mull Reed, William J. Cure and Elizabeth J. Cure, under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERLA"), 42 U.S.C. § 9601 *et seq.*, and the Indiana Environmental Legal Action law ("IELA"), Ind. Code § 13-30-9-1 *et seq.*, to recover costs incurred by the City as a result of the release of perchloroethylene ("PCE") into the environment from the Masterwear Site.

The City now moves for partial summary judgment on liability against Masterwear, James A. Reed, William J. Cure and Elizabeth J. Cure. For the reasons set forth below, the City's motion is **GRANTED** in part, and **DENIED** in part.

1

**I.     Facts:**

1.  Masterwear Corp. operated a dry cleaning business and was located at 28½ North Main Street, Martinsville, Indiana ("Masterwear Site").

2.  James Reed was the President and sole owner of Masterwear Corp.

3.  Masterwear Corp. leased the premises from William and Elizabeth Cure from 1985-1991.

4.  The Cures continue to own the Masterwear Site.

5.  James Reed was responsible for the day-to-day operations and for all decisions related to the handling, storage and disposal of hazardous substances, including perchloroethylene ("PCE").

6.  On August 1, 1991, a release from a holding tank occurred at the Masterwear Site which required intervention by the City of Martinsville Fire Department and a private environmental cleanup contractor.

7.  Contemporaneous samples taken of the holding tank sludge and from a manhole near the Masterwear Site showed greatly elevated levels of PCE.

8.  Repeated releases of PCE occurred at the Masterwear Site during the time the dry cleaning operations were being conducted on the premises.

9.  In November 2002, one of the City's drinking water supply wells was found to be impacted by PCE above the Maximum Contaminant Level (5 ug/L) established by federal law as the safe level for public drinking systems.

10. Based on soil and groundwater taken at and near the Masterwear Site, an area that

        was formerly a gravel parking lot has been identified as a location where PCE was released into the environment.

11.      The release of PCE at the Masterwear Site has migrated with the flow of groundwater toward and into the City's public water supply well field.

12.      The City has incurred response costs due to the release of PCE into the environment from the Masterwear Site. These additional expenses include analytical testing, temporary closure of one well, and installation of an interim PCE treatment system at the City well field.

13.      The City's response costs were necessary and were incurred in substantial compliance with the National Contingency Plan ("NCP") as amended in 1994.

14.      Some of the response costs incurred by the City to date have been investigative in nature, and were undertaken to assess the nature and extent of the contamination.

**II.**      **Summary Judgment Standard**

    Disposition of a case on summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The record and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *National Soffit & Escutcheons, Inc. v. Superior Systems, Inc.*, 98 F.3d 262, 264 (7th Cir. 1996).

    The moving party bears the burden of demonstrating the absence of a triable issue.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden may be met by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. If the moving party meets its burden, the adverse party "may not rest upon the mere allegations or denials of the adverse party's pleading," but must present specific facts to show that there is a genuine issue of material fact. Fed. R. Civ. P. 56(e); *see also National Soffit*, 98 F.3d at 265 (citing *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir. 1991)).

**III. Law**

    **A.     CERCLA § 107**

CERCLA § 107(a), 42 U.S.C. § 9607(a), establishes liability and permits a cause of action for direct cost recovery by a party that incurs cost in cleaning up a contaminated site. *Town of Munster, Ind. v. Sherwin-Williams Co., Inc.*, 27 F.3d 1268, 1270 (7th Cir. 1994). The prima facie elements of a § 107 CERCLA claim are: (1) the Site in question is a "facility"; (2) a release or threatened release of a hazardous substance at or from the facility has occurred; (3) the release or threatened release has resulted in response costs being incurred consistent with the "national contingency plan"; and (4) the defendant is a "responsible party[1]" under § 107. *Kerr-McGee Chem. Corp. v. Lefton Iron & Metal Co.*,

---

[1] A "responsible party" or "covered person" consists of the following: (1) the current owner and operator of the facility; (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of; (3) any person, who by contract, agreement or otherwise arranged for the disposal or treatment of hazardous substances at the facility; and (4) persons who transported hazardous substances to the facility. 42 U.S.C. § 9607(a)(1)-(4); *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1497 (11th Cir. 1996).

14 F.3d 321, 325 (7th Cir. 1994).  Liability under § 107 is strict – the innocence of the defendant is irrelevant.  *Harley-Davidson, Inc. v. Ministar, Inc.*, 41 F.3d 341, 343 (7th Cir. 1994) ("Proof of CERCLA liability does not require proof even of negligence, let alone deliberate wrongdoing; CERCLA liability is strict.").

The Cures[2] argue that the City's § 107 claim lacks merit for two reasons.  First, the City is the owner of a "facility[3]" (the well field) under CERCLA and is itself a potentially responsible party ("PRP").  As a PRP, the Cures argue, the City must allege in its complaint that it is "innocent of the contamination" and must prove its entitlement to the "innocent landowner exception."  Second, the costs incurred by the City are not recoverable as "response costs" because the City has not shown they are consistent with the National Contingency Plan.

      **1.**  **The Innocent Landowner Exception**

One of the defenses to a § 107 claim is known as the "innocent landowner defense" codified at 42 U.S.C. § 9607(b).  This defense allows a truly innocent landowner to be absolved of all potential liability in a cost recovery action.  *Northstar Partners v. S & S Consultants, Inc.*, 2004 WL 963706, at *4 (S.D. Ind. 2004).  Under this defense, "the owner of a hazardous waste site is not liable for any response costs under CERCLA, if he or she did not know that hazardous materials had been deposited at the site at the time he or she purchased the land and if he or she exercised the kind of diligence to find out that

---

[2] Masterwear Corp. and James A. Reed did not respond to the City's motion.

[3] A "facility" is defined as property on which hazardous substances have come to rest.

5

would have been appropriate at the time of the purchase." *Id*. (quoting *Taylor Farm LLC v. Viacom, Inc.*, 234 F.Supp.2d 950, 966 (S.D. Ind. 2002)).

A corollary of this defense is known as the "innocent landowner exception." This exception generally applies to a landowner who, although technically strictly liable for the presence of hazardous waste found on his property, is innocent of the contamination. *See Akzo v. Aigner*, 30 F.3d 761, 764 (7th Cir. 1994); *Rumpke v. Cummins Engine*, 107 F.3d 1235, 1241 (7th Cir. 1997); *AM Intern., Inc. v. Datacard Corp*., 106 F.3d 1342, 1347 (7th Cir. 1997); *NutraSweet Co. v. X-L Engineering Co.*, 227 F.3d 776, 784 (7th Cir. 2000). "This exception has been applied in two situations: (1) when the plaintiff acquires ownership in contaminated property after the contamination has occurred, *Rumpke*, 107 F.3d at 1241-42, and (2) when the plaintiff discovers someone surreptitiously dumped waste on his land. *NutraSweet*, 227 F.3d at 784." *City of Mishawaka v. Uniroyal Holding, Inc.*, 2006 WL 163007, *5 (N.D. Ind. 2006).

The Cures contend that the City is a PRP because it owns the contaminated well field. However, as in *Nutrasweet*, there is no evidence that the City contributed to the contamination of its well field. Indeed, the evidence of record points to Masterwear and its former dry cleaning business as the sole source of the PCE which migrated to the well field.

The Cures also contend that the City must plead and prove that it is innocent. This argument fails for several reasons. First, the fact that the City did not plead the exception is inconsequential, as the City alleged that it is a qualified plaintiff under § 107 of

CERCLA, and that the source of the well field contamination is the Masterwear Site. Second, although the City would need to prove its right to the innocent landowner defense, it need not prove its right to the innocent landowner exception. *See Uniroyal*, 2006 WL 163007, *5 ("'[Plaintiff] need only allege it has not polluted the site, [*Rumpke*, 107 F.3d.] at 1241; the burden lies on [Defendant] to show no fact finder could conclude the plaintiff was innocent.' *See e.g., Taylor Farm, LLC v. Viacom, Inc.*, 234 F.Supp.2d 950, 967 (S.D.Ind. 2002)").

### 2. NCP

To recover responses costs under CERCLA § 107, a plaintiff in a private party response action must show that it incurred the costs in compliance with the EPA's National Contingency Plan. *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 616 (7th Cir. 1998). The NCP is a "series of regulations promulgated by the EPA to establish 'procedures, criteria and responsibilities' for response actions conducted by both the government and private parties." *Reading Co. v. City of Philadelphia*, 823 F.Supp. 1218, 1239 (E.D. Pa. 1993) (citation omitted). "The NCP is designed 'to assure that response actions are both cost effective and environmentally sound.'" *Id*. In "a private party remedial cost-recovery action, the response action must be in substantial compliance with 40 C.F.R. § 300.700(c)(5)-(6) and result in a CERCLA-quality cleanup." *Young v. United States*, 394 F.3d 858, 864 (10th Cir. 2005).

The Cures contend that the City has failed to produce evidence that its alleged response costs are consistent with the NCP. The City responds by citing to the Affidavit

of John W. McInnes, L.P.G., ¶¶ 6-10, which provides, in conclusory fashion, that at least some of its costs are consistent with the NCP.  (*See* Findings of Fact ## 12-14). As these facts are not controverted by the Cures, they are deemed admitted for purposes of establishing liability.  The City has therefore established the elements of its prima facie CERCLA case against the Cures.  The City's motion for partial summary judgment on liability is therefore **GRANTED** against the Cures.

    **B.**    **IELA Claim**

Under the IELA, liability arises only for one who "caused or contributed" to the release of a hazardous substance.  Ind. Code § 13-30-9-2.  The phrase "caused or contributed" is not defined; therefore, the court is to give the words their plain and ordinary meaning.  *See Vanderburgh Cty. Election Bd. v. Vanderburgh Cty. Democratic Cent. Comm.*, 833 N.E.2d 508, 510 (Ind.Ct.App. 2005) ("When the legislature has not defined a word, we give the word its common and ordinary meaning.  In order to determine the plain and ordinary meaning of words, courts may properly consult English language dictionaries.")  Each term of the phrase "caused or contributed" requires some involvement by the actor which produces a result.[4]  By all accounts, the Cures were not

---

[4] "Cause" means "one who or that which acts, happens, or exists in such a way that some specific thing happens as a result; the producer of an effect." Webster's Encyclopedic Unabridged Dictionary 234 (1989).  "Contribute" means "to give (money, time, knowledge, assistance, etc.) along with others to a common supply, fund, etc., as for charitable purposes." *Id*. at 318; *see also Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 294 (7th Cir. 1996) (causation means "'at a minimum, causation in fact – that is, that the harm would not have occurred 'but for' the defendants' conduct.'" (quoting *Daub v. Daub*, 629 N.E.2d 873, 877 (Ind.Ct.App. 1994)).

involved in the alleged release of hazardous substances and had no knowledge of the release. Therefore, the Cures cannot be held liable on the City's IELA claim. The City's motion for partial summary judgment on liability is therefore **DENIED** with respect to the City's IELA claim against the Cures.

### C. Masterwear and James A. Reed

Masterwear Corp. and James A. Reed did not file a response to the City's motion. The court interprets their lack of response as an admission of liability. Accordingly, the City's motion for partial summary judgment on liability is likewise **GRANTED** against Masterwear and James A. Reed with regard to the City's CERCLA and IELA claims.

### IV. Conclusion

For the reasons stated above, the City of Martinsville's Motion for Partial Summary Judgment on Liability (Docket # 78) is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** with respect to the City's CERCLA claim against Masterwear Corporation, James A. Reed, William J. Cure, and Elizabeth J. Cure; **GRANTED** with respect to the City's IELA claim against Masterwear Corporation and James A. Reed; and **DENIED** with respect to the City's IELA claim against the Cures.

**SO ORDERED** this __20th__ day of September 2006.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Frank J. Deveau
SOMMER BARNARD ATTORNEYS, PC
fdeveau@sommerbarnard.com

Raymond L. Faust
NORRIS CHOPLIN & SCHROEDER LLP
rfaust@ncs-law.com

David R. Gillay
BARNES & THORNBURG
david.gillay@btlaw.com

Edward S. Griggs
BARNES & THORNBURG
sean.griggs@btlaw.com

John Milton Kyle III
BARNES & THORNBURG
john.kyle@btlaw.com

Jana K. Strain
PRICE WAICUKAUSKI RILEY & DEBROTA
jstrain@price-law.com

Brad R. Sugarman
SOMMER BARNARD ATTORNEYS, PC
bsugarman@sommerbarnard.com

William C. Wagner
SOMMER BARNARD ATTORNEYS, PC
wwagner@sommerbarnard.com

Ronald J. Waicukauski
PRICE WAICUKAUSKI RILEY & DEBROTA
rwaicukauski@price-law.com

Copies to:

Richard D. Bray
BRAY, BRAY & BRAY
210 East Morgan Street
Martinsville, IN 46151

Nicholas K. Kile
BARNES & THORNBURG
1313 Merchants Bank Building
11 South Meridian Street
Indianapolis, IN 46204